NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EFRAIN SALGADO,**

        **Plaintiff,**

**-vs-**                                            **Case No. 6:12-CV-972-18KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the Complaint filed by Efrain Salgado seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 12, 13, and the parties' memoranda, Doc. Nos. 16, 17. This matter has been referred to the undersigned for issuance of a Report and Recommendation.

## PROCEDURAL HISTORY.

      In 2007, Salgado filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C.

NOT FOR PUBLICATION

§ 1381, *et seq.* (sometimes referred to herein as the "Act"). He alleged that he became disabled on March 31, 2004. R. 16A, 106.[1]

After his applications were denied initially and on reconsideration, an administrative law judge ("ALJ") held a hearing at Salgado's request. Salgado, represented by an attorney, Salgado's mother, Carmen, and a vocational expert ("VE") testified at the hearing. R. 449-78.

After considering the testimony and the medical evidence presented, the ALJ determined that Salgado was insured under OASDI through December 31, 2009. R. 19. The ALJ found that Salgado had not engaged in substantial gainful activity since the alleged disability onset date. *Id.*

The ALJ concluded that Salgado had an organic mental disorder (mood disorder) as a residual of a skull fracture, cannabis abuse, obesity, and a herniation of the thoracic spine. R. 19. The mental impairment would result in moderate difficulties in activities of daily living, social functioning and concentration, persistence or pace with no episodes of decompensation of extended duration. R. 20. The ALJ found that Salgado's impairments or combination of impairments did not meet or equal any listed impairment. R. 19.

The ALJ found that Salgado had the residual functional capacity ("RFC") to do the following:

> [P]erform a reduced range of medium work. He can lift 50 pounds occasionally and 25 pounds frequently; and sit 6 hours and stand/walk 6 hours in an 8-hour workday. [He] should avoid

---

[1] Salgado previously requested, and was granted, a closed period of disability from July 1996 through November 1997. R. 38-42. The newest SSI application is not in the record before the Court.

>climbing ladders/ropes/scaffolds, working on unprotected heights, or around dangerous moving machinery. [He] is limited to simple repetitive tasks, occasional superficial interaction with others and no negotiation . . . .

R. 21. In making this assessment, the ALJ gave great weight to the RFC assessments prepared by Deborah Carter, Ph.D., and Bruce Hertz, Ph.D., both of whom were reviewing psychologists. R. 26 (citing Exs. B9F and B12F).

The ALJ concluded that Salgado was unable to perform any of his past relevant work. R. 27. Based on the testimony of the VE, the ALJ concluded that there were jobs available in the national economy that Salgado could perform. R. 27-28. Therefore, the ALJ concluded that Salgado was not disabled. R. 28.

Salgado sought review of the ALJ's decision by the Appeals Council. R. 13. On April 24, 2012, the Appeals Council issued a decision finding no reason to review the ALJ's decision. R. 9-11.

Salgado seeks review of the Commisioner's decision by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Salgado having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citations omitted), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

NOT FOR PUBLICATION

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' memoranda and in the ALJ's decision. Accordingly, I will only summarize facts necessary to address the mental functional capacity issues raised in order to protect Salgado's privacy to the extent possible.[2]

Salgado was born in 1970. R. 106. He attended school through one year of college. R. 452. He had previously worked as a swimming pool servicer, material handler, industrial truck operator, dispatcher, store laborer, stock clerk and telephone solicitor. R. 473-74. He had difficulty keeping a job because he was difficult with everyone. R. 466.

On April 26, 2007, Son L. Chau, M.D., treated Salgado for complaints of headaches and seizure activity. He complained of decreased memory, anger and lack of patience since he had a skull fracture in 1996. R. 239; *see also* R. 39.

In June 2007, Lata Bansal, M.D., a neurologist, examined Salgado. Salgado reported problems with anger control and problems with memory. He also had seizures every few hours. R. 245. Dr. Bansal indicated that the episodes Salgado described as seizures were more likely vasovagal episodes. R. 246.

In July 2007, Nancy S. Hinkeldey, Ph.D., examined Salgado at the request of the SSA. Salgado reported that he experienced suicidal ideation all the time. Dr. Hinkeldey observed that Salgado's affect was within normal limits. He reported memory decline and difficulty processing information. R. 293. He avoided people he did not know. R. 294. Salgado scored within the average or above average range on the Wechsler Memory Scale-

---

[2] The photocopies of many of the records are nearly illegible. Nevertheless, the record appears sufficient to support this Report and Recommendation.

Third Edition. R. 294. Dr. Hinkeldey's assessment was that Salgado had a depressive disorder not otherwise specified ("NOS") and a traumatic brain injury by history with the need to rule out seizures. No cognitive deficits were noted. R. 295.

On August 4, 2007, Eric Wiener, Ph.D., prepared a Psychiatric Review Technique form after review of Salgado's records. Dr. Weiner opined that Salgado would have mild limitations in activities of daily living, social functioning and concentration, persistence or pace with no episodes of decompensation. R. 307

Neil Figueroa, M.D., a psychiatrist, began treating Salgado in August 2003 for problems with anger. R. 315. Dr. Figueroa examined Salgado again in September and November 2007. In September, Salgado reported that medication was not reducing the level of his anger. R. 312. On the second visit, Salgado admitted that he was not taking the prescribed medication. R. 311.

In February 2008, Deborah Carter, Ph.D., prepared mental RFC assessments based on review of Salgado's records. R. 316-333 (Exs. B8F and B9F). Dr. Carter opined that Salgado had mild limitations in activities of daily living, and moderate limitations in social functioning and concentration, persistence or pace. R. 330. He would also be moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. R. 317. Dr. Carter indicated that Salgado could understand, remember and carry out routine instructions/procedures, make routine decisions, and concentrate to complete things he started. He had decreased tolerance for stress and change. R. 318.

In September 2008, Bruce Hertz, Ph.D., prepared mental RFC assessments after review of Salgado's records. R. 345-62 (Exs. B12F and B13F). Dr. Hertz opined that

Salgado would have mild limitations in activities of daily living, and moderate limitations in social functioning and concentration, persistence or pace with no episodes of decompensation. R. 355. He would also be moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. R. 360. Salgado had the ability to understand and perform simple instructions and tasks. He had decreased tolerance for stress and change. R. 361.

In April 2010, M. Joanna Vilar, Psy.D., and Yamil Santos, Ph.D., examined Salgado. Salgado reported being irritable and angry for no reason. He was also depressed and had difficulty concentrating. R. 411. He completed various psychological tests. R. 411-15. The assessment was that Salgado had a mood disorder with depressive features. R. 416. He had a personality profile that indicated that he was experiencing severe emotional distress, depressed mood and interpersonal difficulties. The treatment providers indicated that Salgado's prognosis was guarded. R. 415. Dr. Vilar prepared a mental RFC assessment in which she indicated that Salgado would have moderate limitations in responding appropriately to supervisors and co-workers, and mild limitations in understanding, remembering and carrying out complete instructions. R. 417-18.

At the ALJ's hearing, Salgado testified that he did not manage his own funds. R. 465. During a typical day, Salgado watched television most of the day. He could make sandwiches for his children. He did some housework and cooking but not grocery shopping. R. 460. He played dominoes and sometimes poker with friends. He was able to drive. R. 461.

Carmen Salgado testified that she saw many changes in Salgado after he was injured. Salgado had no patience, was easily frustrated and had a bad temper. R. 469-71.

He had trouble remembering things. R. 196, 470. He had difficulty being in big crowds. R. 471. He was also depressed. R. 472.

## TESTIMONY OF THE VE.

At the hearing, the ALJ asked the VE to assume the following hypothetical person:

> Simple repetitive tasks, only occasional superficial interaction with others. In other words, there's no negotiation, no confrontation. Lifting 50 pounds occasionally, 25 pounds frequently; no climbing of ladders, ropes or scaffolds; no work in unprotected heights or around dangerous moving machinery. . . . [W]ork background and an individual of 40 years old with a high school education.

R. 474. The VE testified that this person could not do any of Salgado's past relevant work. The person could perform the following jobs: cleaner/housekeeper (light, SVP 2); sorter, agricultural produce (light, SVP 2); and, kitchen helper (medium, SVP 2). *Id.*

Salgado's attorney asked the VE to assume additional limitations as follows:

> [T]he hypothetical claimant is markedly limited in such areas as accepting orders and dealing with a supervisor, making it through an eight-hour workday without interruption that distracts his coworkers, being able to maintain his concentration and be punctual. . . . [D]ifficulties in concentration, losing track. . . . [A]lso the same limitation in terms of personal hygiene.

R. 475. The VE testified that these additional limitations would eliminate all work. *Id.*

## ANALYSIS.

Salgado contends that the ALJ erred by failing to include moderate limitations in concentration, persistence and pace and in the ability to complete a normal workday and workweek in the RFC and questions to the VE. These are the only issues I will address.[3]

---

[3] The parties were advised in the Scheduling Order that issues not specifically raised may be waived. Doc. No. 14 at 2.

NOT FOR PUBLICATION

Salgado contends that the ALJ was required to include moderate limitations in concentration, persistence or pace expressly in the RFC and hypothetical question to the VE. This argument is based on *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2001), in which the United States Court of Appeals for the Eleventh Circuit found that the VE's testimony could not support the ALJ's finding that Winschel could perform work available in the national economy because the hypothetical question did not include or implicitly account for moderate limitations in concentration, persistence or pace. *Id.* at 1181.

The Commissioner argues that the ALJ implicitly included moderate limitations in concentration, persistence or pace in the RFC finding and the hypothetical question to the VE through the limitation to simple repetitive tasks. This argument is supported by the ALJ's indication that he placed great weight on the opinions of Dr. Carter and Dr. Hertz, both of whom indicated that, despite moderate limitations in concentration, persistence and pace, Salgado could perform simple tasks.

Salgado also contends that the ALJ erred by failing to account for his moderate limitations in completing a normal workday and workweek without interruptions from psychologically based symptoms in the RFC and hypothetical questions. The Commissioner argues that this was just a summary conclusion that was not incorporated into the Functional Capacity Assessment in Part III of the mental RFC forms prepared by Dr. Carter and Dr. Hertz.

Part III of the mental RFC assessment instructs the preparer to elaborate upon or clarify the summary conclusions earlier in the form. Recently, in an unpublished decision, the Eleventh Circuit adopted the Commissioner's argument that boxes checked on the

-8-

mental RFC form indicate that the claimant is impaired in certain abilities, but Part III of the form states the reviewer's opinion about what the claimant can do despite the identified impairments. *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012).

In *Land*, the reviewing psychologists checked boxes indicating that the claimant would be moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. In Part III of the form, the reviewing psychologists opined that the claimant retained the mental ability to carry out simple tasks and assignments. *Id.* at 49-50. The Eleventh Circuit found that the reviewers' opinions supported the ALJ's finding that the claimant could perform work available in the national economy based on an RFC that included the limitation to work involving simple, routine, repetitive tasks. *Id.* at 49-50.

In the present case, both Dr. Carter and Dr. Hertz checked the box indicating that Salgado would have moderate limitations in completing a normal workday and workweek due to psychologically based symptoms. Nevertheless, Dr. Carter indicated in Part III of the mental RFC form that Salgado could understand, remember and carry out routine instructions/procedures, make routine decisions, and concentrate to complete things he started. Similarly, Dr. Hertz indicated in Part III of the mental RFC form that Salgado could understand and perform simple instructions and tasks. Based on the analysis in *Land*, these functional capacity findings adequately accounted for moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. By incorporating the limitation to simple, repetitive tasks in the RFC and hypothetical question to the VE, the ALJ adequately accounted for Salgado's limitations in the abiolity to complete a normal workday and workweek.

NOT FOR PUBLICATION

## **RECOMMENDATION.**

For the reasons set forth above, I respectfully recommend that the Court **AFFIRM** the Commissioner's decision.  I further recommend that the Court direct the Clerk of Court to enter judgment consistent with its order on this Report and Recommendation and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** this 22nd day of July, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE